Robyn SANDERS and Cynthia
Mullanix, Plaintiffs,

v.

CASA VIEW BAPTIST CHURCH,
Defendant, and

*Shelby Baucum,* Defendant and
Third–Party Plaintiff.

Civ. A. No. 3–92–CV–1630–P.

United States District Court,
N.D. Texas,
Dallas Division.

Aug. 24, 1995.

Robert G. Chadwick, Jr., Eric Eisenbraun, Ferrer, Montes, Poirot & Eisenbraun, Dallas, Texas, for plaintiffs.

John E. McFall, Kimberly N. Lonergan, Bryant S. McFall, Dallas, Texas, for defendant Casa View Baptist Church.

Ray Fargason, Harding, Bass, Fargason & Booth, Lubbock, Texas, for defendant Shelby Baucum.

## ORDER

SOLIS, District Judge.

Presently before the Court are: 1) Defendant Casa View Baptist Church's ("Casa View's") Motion For Summary Judgment On Shelby Baucum's Cross–Claims filed on April 28, 1995, Baucum's Response filed on June 2, 1995, and Casa View's Reply filed on June 22, 1995; 2) Defendant Casa View's Motion For Summary Judgment On Plaintiffs' Claims filed on May 1, 1995, Plaintiffs' Response filed on May 31, 1995, and Casa View's Reply filed on June 20, 1995; and 3) Shelby Baucum's ("Baucum's") Motion For Summary Judgment filed on May 5, 1995, Plaintiffs' Response filed on June 2, 1995, and Baucum's Reply filed on June 21, 1995.

## BACKGROUND

Baucum was a minister at Casa View until he resigned on September 25, 1991. Plaintiff Cynthia Mullanix ("Mullanix") claims that she entered into a marital counseling relationship with Baucum in January of 1991. This counseling relationship led to a sexual relationship between Baucum and Mullanix.

At the time the sexual relationship began, Mullanix was working as a waitress at a restaurant. On March 1, 1991, Mullanix became employed as a receptionist at Casa View. Baucum was her supervisor. On September 8, 1991, Mullanix informed Baucum that she wanted to end the sexual relationship.

Plaintiff Robyn Sanders ("Sanders") claims that she entered into a counseling relationship with Baucum due to her marital problems. On Memorial Day of 1990, Sanders claims that Baucum initiated sexual contact with her, and a sexual relationship between Sanders and Baucum continued periodically until she ended it on September 16, 1991.

On September 22, 1991, Mullanix confessed to Sanders that she was having an affair with Baucum. Sanders informed Mullanix that she too was having an affair with Baucum. On September 23, 1991, Plaintiffs told Joel Steed, deacon and personnel committee chairman of Casa View, about their relationships with Baucum. Baucum confessed to Pastor Smith that he had committed adultery

with Plaintiffs. Baucum accepted Casa View's request to resign.

Plaintiffs were placed on administrative leave with pay pending an investigation and advice from Casa View's insurance carrier regarding potential church liability. Casa View terminated Plaintiffs on December 2, 1991.

## STANDARD FOR SUMMARY JUDGMENT

■ Summary Judgment is proper if the pleadings, discovery materials and affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). All reasonable doubts and inferences must be decided in the light most favorable to the party opposing the motion. *Thornbrough v. Columbus and Greenville R.R. Co.,* 760 F.2d 633, 640 (5th Cir.1985). Once a proper motion for summary judgment is made, the nonmovant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact. *Thurman v. Sears, Roebuck & Co.,* 952 F.2d 128, 131 (5th Cir.1992). To satisfy this burden, the nonmovant may not rely on "mere allegations in their pleadings without setting forth specific facts establishing a genuine issue worthy of trial." *Topalian v. Ehrman,* 954 F.2d 1125, 1131 (5th Cir.1992).

## DISCUSSION

### 1) BAUCUM'S MOTION FOR SUMMARY JUDGMENT:

Plaintiffs allege the following claims against Baucum: negligence (malpractice in Baucum's pastoral counseling), breach of fiduciary duties, sex discrimination in employment pursuant to Title VII, and intentional infliction of emotional distress.

*Negligence–Malpractice In Pastoral Counseling*

Baucum argues that malpractice in pastoral counseling is not actionable under Texas

law. Again, Baucum cites to *Dausch v. Rykse,* 52 F.3d 1425 (7th Cir.1994), in asserting that pastoral counseling is centered on matters of religion, and claims of negligence are not cognizable in civil court. 52 F.3d at 1428.

■ The Court agrees with the many decisions that have held that an action for clergy malpractice could not be maintained because the evaluation of such a complaint "would require the court to extensively investigate and evaluate religious tenets and doctrines." *Dausch v. Rykse,* 52 F.3d 1425, 1432 (7th Cir.1994).[1] However, "tort claims for behavior by a cleric that does not require the examination of religious doctrine are cognizable." *Schmidt v. Bishop,* 779 F.Supp. 321, 327 (S.D.N.Y.1991). The Free Exercise Clause does not relieve an individual of the obligation to comply with neutral laws of general applicability, *Employment Div., Dep't of Human Resources v. Smith,* 494 U.S. 872, 879, 110 S.Ct. 1595, 1600, 108 L.Ed.2d 876 (1990), nor does it "shield clergy from all liability for their wrongs." *Dausch,* 52 F.3d at 1435.

■ In addition, while spiritual counseling, including a cleric's marital counseling, may implicate First Amendment rights, the Court is not convinced that Plaintiffs' allegations permit Baucum to assert a free exercise defense. *See Destefano v. Grabrian,* 763 P.2d 275, 283 (Colo.1988). When the free exercise clause is raised as a defense, the threshold question is whether the conduct of the defendant is religious. *Id;* (citing *Wisconsin v. Yoder,* 406 U.S. 205, 215–18, 92 S.Ct. 1526, 1533–34, 32 L.Ed.2d 15 (1972). In the spiritual counseling context, "the free exercise clause is relevant only if the defendant can show that the conduct that allegedly caused plaintiff's distress was in fact part of the belief and practices of the religious group." *Destefano,* 763 P.2d at 283–84.

---

1. The Texas legislature has enacted a 1993 statute that covers liability for sexual exploitation in counseling in a professional relationship, including a clergy member's assistance to an individual in resolving emotional, attitudinal, or relationship conflicts. However, the act does not include religious, moral, and spiritual counseling, teaching, and instruction. *See* Tex.Civ.Pract. & Rem.Code § 81.001, *et seq.* This statute is not available for causes of action arising prior to September 1, 1993.

■ If Plaintiffs' allegations are true, Baucum's preying on Plaintiffs, masqueraded in the form of marriage counseling, constitutes conduct that is not subject to First Amendment protection. Certainly such conduct is not part of the beliefs and practices of Casa View. Therefore, to the extent that Plaintiffs' claim is based on Baucum's holding himself out to provide services of a marriage counselor, Plaintiffs' claim under these circumstances is for professional malpractice by a marriage counselor, not clergy malpractice. *Dausch*, 52 F.3d at 1433–34. Although Plaintiffs' 2nd Amended Complaint labels this claim negligence (malpractice in Baucum's pastoral counseling), the Court will construe the claim based on the facts alleged as one for professional malpractice by a marriage counselor. Fed.R.Civ.P. 8(f); *Quality Mercury, Inc. v. Ford Motor Company*, 542 F.2d 466 (8th Cir.1976); *Fitz–Patrick v. Commonwealth Oil Company*, 285 F.2d 726 (5th Cir. 1960).

Plaintiffs' 2nd Amended Complaint states that Baucum offered his services to help Plaintiffs with their marital problems. 2nd Amended Comp., pp. 6–7, 9–10, 13. Moreover, Plaintiffs assert that Baucum should be required to exercise that degree of skill and learning normally applied by "secular counselors." 2nd Amended Comp., p. 28. Mullanix specifically states that Baucum offered "to provide me with marital counseling and that he would like to do so." Mullanix Aff., ¶ 3. Furthermore, Mullanix describes the nature and extent of the marriage counseling, and that Baucum bragged about his skills and experience as a marital counselor. Mullanix Aff., pp. 2–3.

Likewise, Sanders made similar accusations with respect to Baucum's counseling of her marital problems. Sanders Aff., pp. 2–3. Thus, although Plaintiffs cannot maintain a claim of negligence in pastoral counseling or clergy malpractice, a viable claim for professional malpractice/negligence may exist regarding marriage counseling against Baucum. The next issue for discussion is whether Baucum owed a duty to Plaintiffs.

■ In Texas, actionable negligence requires the existence of a legal duty owed by one person to another, a breach of that duty, and damages proximately resulting from breach of that duty. *Fed'l Sav. and Loan Insurance Corp. v. Texas Real Estate Counselors*, 955 F.2d 261, 265 (5th Cir.1992); *El Chico Corp. v. Poole*, 732 S.W.2d 306, 311 (Tex.1987). In an action for professional negligence, the question whether a defendant owed a duty to the plaintiff is a question of law, *Greater Houston Transportation Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex.1990), but whether the duty was breached is a question of fact. *Rudolph v. ABC Pest Control, Inc.*, 763 S.W.2d 930, 933 (Tex.App.—San Antonio 1989, error denied); *Fed'l Sav. and Loan Insurance Corp.*, 955 F.2d at 265. "While all individuals owe a duty to exercise reasonable care to avoid foreseeable injury to others, professionals, by virtue of their special skill and expertise, are held to a higher standard of reasonable care." *Fed'l Sav. and Loan Insurance Corp.*, 955 F.2d at 265.

■ A professional owes his client a duty to use the skill and care in the performance of his duties commensurate with the requirements of his profession. *Id.* Liability attaches only for failure to exercise reasonable care and skill in accordance with those requirements. *Id.* The Court is of the opinion that these same general standards for professional negligence should apply in this case.

Plaintiffs allege that Baucum held himself out as a skilled and experienced marital counselor with a psychology degree, and undertook to provide such counseling. Mullanix Aff., ¶¶ 3–5, 8–10; Sanders Aff., ¶¶ 5–7, 9, 12. Moreover, Plaintiffs assert that Baucum engaged in a romantic and sexual relationship with them designed to solicit their affection and emotional dependence for Baucum's benefit rather than for Plaintiffs' benefit during the course of the counselor-counselee relationship. 2nd Amended Comp., pp. 28–29. Plaintiffs contend that they suffered damages as a result of Baucum's actions during the counselor-counselee relationship.

■ The Court finds that Plaintiffs' cause of action for professional negligence with respect to marital counseling against Baucum is actionable in Texas. Moreover, the Court finds that genuine issues of material fact exist with respect to such claim. Ac-

cordingly, the Court will deny Baucum's Motion For Summary Judgment with respect to Plaintiffs' negligence claim.

*Breach Of Fiduciary Duties*

Plaintiffs assert that Baucum breached his fiduciary duties to Plaintiffs because by virtue of their relationship, they placed a special confidence and trust in him. Baucum argues that Texas does not recognize a fiduciary relationship between a minister and a member of a congregation. Baucum cites to *Dausch v. Rykse,* 52 F.3d 1425 (7th Cir.1994), in alleging that the position of spiritual and religious advisor does not impose a fiduciary duty or establish a fiduciary relationship.

In finding no fiduciary duty, the *Dausch* Court stated that "because it would require the Court to define the scope of a fiduciary duty owed persons by their clergy, a matter clearly rooted in the tenets and internal organization of a religion, it raises the same constitutional difficulties encountered when defining the standard of care under negligence." *Dausch,* 52 F.3d at 1438. Alleging a breach of fiduciary duty under these circumstances is simply an elliptical way of alleging clergy malpractice. *Id., See also Schmidt v. Bishop,* 779 F.Supp. 321 (S.D.N.Y.1991).

However, the Texas Supreme Court has recognized that certain informal relationships may give rise to a fiduciary duty. *Crim Truck & Tractor Co. v. Navistar International Transportation Corp.,* 823 S.W.2d 591 (Tex.1992). The Texas Supreme Court stated that such "informal fiduciary relationships have also been termed 'confidential relationships' and may arise 'where one person trusts in and relies upon another, whether the relation is a moral, social, domestic or merely personal one." Id. at 594, (citing *Fitz–Gerald v. Hull,* 237 S.W.2d 256, 261 (1951)). The Texas Supreme Court noted that because not every relationship involving a high degree of trust and confidence rises to the stature of a formal fiduciary relationship, "the law recognizes the existence of confidential relationships in those cases 'in which influence has been acquired and abused, in which confidence has been reposed and betrayed.'" *Id.*

Additionally, the existence of a confidential relationship is usually a question of fact. *Id.* Furthermore, the nature of the marriage counseling relationship between Baucum and Plaintiffs is an issue of fact to be determined at trial. *See Destefano v. Grabrian,* 763 P.2d 275, 283 (Colo.1988). The Court is of the opinion that genuine issues of material fact are present in this case regarding whether confidential relationships existed between Baucum and Plaintiffs "in which influence had been acquired and abused, in which confidence had been reposed and betrayed." Plaintiffs assert that they entered into a counselor-counselee relationship with Baucum based, in part, on Baucum's representations made with respect to his expertise in marriage counseling. Mullanix Aff., ¶¶ 3, 8–10; Sanders Aff., ¶¶ 5, 9–10, 12. Plaintiffs state that Baucum solicited their trust and confidence with his purported ability to help them out with their respective marital situations. 2nd Amended Comp., pp. 6, 10; Mullanix Aff., ¶¶ 4–5, 8, 18; Sanders Aff., ¶¶ 5–7, 9, 16. Moreover, Plaintiffs allege that Baucum made misrepresentations of fact to Plaintiffs for the purpose of seducing the affections and emotional dependence of Plaintiffs for Baucum's benefit rather than for the benefit of Plaintiffs. 2nd Amended Comp., pp. 19–25. In addition, Plaintiffs contend that Baucum breached his fiduciary duty in disclosing their respective confidential information to others. 2nd Amended Comp., pp. 25–27.

As discussed above, if Plaintiffs' allegations are true, the Court would have little difficulty finding that Baucum owed Plaintiffs a fiduciary duty as a marriage counselor to Plaintiffs. *See Destefano v. Grabrian,* 763 P.2d 275, 284 (Colo.1988). His duty would be created by his undertaking to counsel them. *Id.* Moreover, Baucum's alleged undertaking would create a duty to engage in conduct designed to improve Plaintiffs' respective marital relationships. Thus, entering into the sexual relationships would be clear evidence of a breach of Baucum's fiduciary duties. Accordingly, the Court will deny Baucum's Motion with respect to all of Plaintiffs' breach of duty claims because genuine issues of material fact exist as to whether

Baucum owed fiduciary duties to Plaintiffs pursuant to a confidential relationship as a result of marital counseling.

*Title VII–Sexual Harassment*

■ In order to establish an actionable claim of sexual harassment in the work place, a plaintiff must show that:

1) she belongs to a protected class;

2) she was subject to unwelcome sexual harassment;

3) the harassment was based on sex;

4) the harassment affected a term, condition, or privilege of employment; and

5) the employer knew or should have known of the harassment and failed to take prompt remedial action.

*Nash v. Electrospace Sys. Inc.*, 9 F.3d 401 (5th Cir.1993).

Baucum argues that Plaintiffs' assertions do not rise to the level of severity necessary for supporting a claim for sexual harassment. Moreover, Baucum alleges that no evidence has been presented to show that a change in the terms, conditions, or privileges of Plaintiffs' employment occurred because of Baucum's actions during the pertinent time periods.

■ The Court is of the opinion that Plaintiffs have presented insufficient summary judgment evidence to support a claim of sexual harassment against Baucum. Mullanix consented to the sexual contact with Baucum at least until September 8, 1991, the day she informed him that she wanted to end their sexual relationship.[2] Sanders consented to the sexual contact with Baucum at least until September 16, 1991, the day that she informed him that she wanted to end their sexual relationship. Plaintiffs allege that Baucum subjected Plaintiffs to sexual harassment until September 25, 1991.

However, Mullanix claims that the only contact of a sexual nature that occurred after September 8, 1991 constituted Baucum's alleged kissing of Mullanix on the neck. This incident occurred shortly after an extensive sexual relationship between Mullanix and Baucum. Likewise, Sanders claims that Baucum made only one sexual comment to her after September 16, 1991.[3]

Furthermore, although Baucum allegedly criticized Plaintiffs' work performance after the sexual relationships ended, Baucum never acted on any of his alleged threats to terminate Plaintiffs. Rather, within a few weeks from the time that Mullanix first informed Baucum that she wanted to end their sexual relationship, Plaintiffs informed Casa View of the surrounding circumstances, and Casa View promptly requested for Baucum's resignation. Casa View, independent of Baucum, subsequently terminated Plaintiffs because Plaintiffs violated church policy by engaging in the adulterous activity with Baucum. Thus, the Court finds that Plaintiffs have produced insufficient evidence to support a claim for sexual harassment against Baucum. Accordingly, the Court will grant Baucum's Motion For Summary Judgment regarding Plaintiffs' Title VII sexual harassment claim.

*Intentional Infliction Of Emotional Distress ("IIED")*

■ Plaintiffs must prove the following to recover damages for their IIED claim:

1) Defendants acted intentionally or recklessly;

2) Defendants' conduct was extreme or outrageous;

3) Defendants' actions caused Plaintiff emotional distress; and

4) the resulting emotional distress was severe.

*Danawala v. Houston Lighting & Power Co.*, 14 F.3d 251, 256 (5th Cir.1993). In this case, Plaintiffs have supplied enough evidence to raise genuine issues of material fact relating to each element of IIED. Plaintiffs' allegations that Baucum sexually harassed Plaintiffs at work, made graphic sexual comments and gestures, and engaged in a sexual rela-

---

**2.** Plaintiffs' argument that they were incapable of giving psychological consent is without merit. The Court finds that Plaintiffs freely consented to their respective adulterous affairs with Baucum.

**3.** Sanders also claims that Baucum telephoned Sanders at her home stating that he wanted to continue their sexual relationship. This personal call is no evidence of sexual harassment at work.

tionship, at relatively the same time, with two employees who worked within a few feet of each other, could rise to the level of extreme or outrageous conduct under certain circumstances. Thus, the Court is of the opinion that Baucum's Motion For Summary Judgment should be denied with respect to Plaintiffs' IIED claim.

2) CASA VIEW'S MOTION FOR SUMMARY JUDGMENT:

Plaintiffs allege the following claims against Casa View: Title VII—sex discrimination in employment; breach of fiduciary duties; negligence-malpractice in pastoral counseling, Title VII—sex discrimination in terminations, Title VII—retaliation; negligent hiring; negligent supervision; and intentional infliction of emotional distress.

*Breach Of Fiduciary Duties, Negligence, and IIED*

■ The same analysis as discussed above applies with respect to the viability of Plaintiffs' claims for breach of fiduciary duties, negligence, and IIED. However, Plaintiffs claim that Casa View should be vicariously liable for Baucum's intentional torts. Therefore, the Court must determine whether genuine issues of material fact exist in order to hold Casa View vicariously liable for these alleged intentional torts of Baucum. Casa View is not vicariously liable unless Plaintiffs can show that Baucum was acting within the course and scope of his employment. *Country Roads, Inc. v. Witt*, 737 S.W.2d 362, 364 (Tex.App.—Houston [14th Dist.] 1987, no writ).

■ Initially, Plaintiffs argue that Casa View granted Baucum actual authority to conduct counseling. Actual authority is that which a principal intentionally confers upon an agent, intentionally allows the agent to believe that he possesses, or allows the agent to believe that he possesses by want of care. *Currey v. Lone Star Steel Co.*, 676 S.W.2d 205, 209–10 (Tex.App.—Ft. Worth 1984, no writ).

■ Alternatively, Plaintiffs allege that Baucum had apparent authority to counsel them. Apparent authority is that which binds a principal who has acted in such a way

that a reasonably prudent person would believe that the agent had the authority to act as he did in the circumstances. *Biggs v. U.S. Fire Ins. Co.*, 611 S.W.2d 624, 629 (Tex.1981).

Plaintiffs assert that Baucum had actual authority because an August 28, 1989 Casa View directive stated that "the pastoral/ministerial staff of the church has primary responsibility for the spiritual counseling of the church." Furthermore, Plaintiffs argue that Baucum had actual authority because Casa View either intentionally, or through want of care, allowed Baucum to believe that he was authorized to provide counseling.

However, Pastor Smith testified that Baucum was a member of the ministerial staff, not the pastoral/ministerial staff. Smith Depos., pp. 492–93. Thus, the August 28, 1989 directive did not include Baucum as a person with authority to conduct counseling. Moreover, Plaintiffs have not provided sufficient evidence to show that Casa View either knew or should have known that Baucum was providing counseling to Plaintiffs.

For example, Plaintiffs allege that Casa View knew Baucum was counseling Plaintiffs because in the Summer of 1991, Jim Walters, Casa View's Minister of Missions, walked into Baucum's office on one occasion when Baucum was alone with Mullanix. Shortly thereafter, Walters told Mullanix that Baucum was not supposed to be counseling. Mullanix Aff., ¶ 13. However, Walters asked Mullanix directly if Baucum was counseling her, and Mullanix responded, "no." At that point, Walters informed Mullanix that Baucum was not supposed to be counseling. Mullanix Depos., pp. 1702–04. In fact, Mullanix testified that she told Walters that she was not going to Baucum for counseling because Baucum had told her not to tell anyone that she was seeing him for counseling. *Id.* at 1550. Plaintiffs have not presented any evidence to show that Casa View either knew, or should have known, that Baucum was providing marital counseling.

■ Counseling was not a part of Baucum's job description or within his job authority. Pastor Smith informed Baucum that he was never to counsel. Baucum Depos., pp. 749–55; Smith Depos., pp. 40–41, 396–97.

Mullanix told Walters that Baucum was not counseling her. Therefore, the Court finds that Baucum did not have actual or apparent authority to counsel Plaintiffs.

Additionally, Plaintiffs assert that Casa View ratified the tortious conduct of Baucum. An employer who ratifies the tortious conduct of an agent may be vicariously liable for such tortious conduct. *Prunty v. Arkansas Freightways, Inc.,* 16 F.3d 649, 652–53 (5th Cir.1994). Ratification occurs when the employer fails to repudiate the known acts of an employee. *Id.* However, the Court finds that Casa View did not ratify the tortious acts because Plaintiffs have failed to show that Casa View knew or should have known about such conduct.

In an attempt to show that Casa View should have known of Baucum's actions, Plaintiffs supply several examples of other women who "felt uncomfortable" around Baucum. Moreover, Pastor Smith told Baucum that his car was seen parked outside of Mullanix's home. However, this evidence does not show that Casa View knew that Baucum was counseling Plaintiffs, or that he was engaged in a sexual relationship with them. Rather, when Plaintiffs informed Casa View of Baucum's conduct, Casa View promptly requested for Baucum's resignation.

In addition, the Court notes that sexual misconduct by a member of the clergy is, by the weight of the authority, beyond the scope of employment of the cleric. *See Dausch v. Rykse,* 52 F.3d 1425, 1436 (7th Cir.1994). Furthermore, Casa View's policy provided that adultery by any member of the clergy is immediate grounds for dismissal. Steed Aff., ¶ 7. Thus, the Court finds that Casa View should not be held vicariously liable for any intentional torts attributed to Baucum. Accordingly, the Court will grant Casa View's Motion For Summary Judgment with respect to Plaintiffs' claims for breach of fiduciary duties, malpractice, and IIED.

*Negligent Hiring/Retention/Supervision*

In Texas, employers have a duty to inquire as to the competence and qualifications of those the employer considers for employment. *Akins v. Estes,* 888 S.W.2d 35, 42 (Tex.App.—Amarillo 1994, application for writ pending). To prevail on a claim for negligent hiring or supervision, a plaintiff must show that the employer retained in its employment an individual who was incompetent or unfit for the job as a result of a failure to make a reasonable inquiry into the individual's competence and qualifications. *Id.*

The Court finds that Casa View made a reasonable inquiry into Baucum's competence and qualifications. First, Rhea Cathey, a member of the search committee of Casa View, was informed from a friend that Baucum had a good reputation. Cathey Depos., p. 39. Cathey then contacted three references for Baucum from his previous employer, First Baptist Church of Plainview ("First Baptist"). All three references had favorable comments regarding Baucum. *Id.* at 18–19. Cathey met with Baucum on one occasion, and Pastor Smith and two other Casa View members met with Baucum on another occasion. *Id.;* Smith Depos., pp. 48–49. Afterwards, Casa View arranged for Baucum and his wife to visit Dallas to meet with all of the members of the search committee. Smith Depos., pp. 56–58.

Carlos Mcleod, the former Pastor at First Baptist, and leader of the Evangelism Division of the Texas Baptist Convention, told Pastor Smith that "I want you to know that if I were to leave denominational work and go back into the pastorate today, that I would do whatever I had to do and pay whatever I had to pay to get Shelby Baucum on my staff as education minister. He's the best there is." Smith Depos., p. 61. Mcleod was Baucum's supervisor for more than ten years at First Baptist.

Moreover, Pastor Smith received a very favorable recommendation from Bernie Spooner, another member of the Texas Baptist Convention. Smith Depos., pp. 63–64. Casa View was only required to conduct a reasonable search, not an exhaustive investigation. Therefore, the Court finds that Casa View did conduct a reasonable search into Baucum's competence and qualifications before it hired him.

Furthermore, as explained above, Casa View did not know, nor should it have known, that Baucum was counseling Plaintiffs and engaging in a sexual relationship with them. The Court notes that Plaintiffs themselves worked within a few feet of each other without knowing of each other's relationship with Baucum. Thus, the Court will grant Casa View's Motion For Summary Judgment regarding Plaintiffs' negligent hiring/retention/supervision claims.

*Title VII–Sex Discrimination*

In a Title VII case, the plaintiff must first prove by a preponderance of the evidence a *prima facie* case of discrimination. The plaintiff may prove her case by direct or circumstantial evidence. *U.S. Postal Service Bd. of Govs. v. Aikens,* 460 U.S. 711, 714, 103 S.Ct. 1478, 1481, 75 L.Ed.2d 403 (1983). A plaintiff makes out a *prima facie* case of sex discrimination by proving: 1) she was discharged; 2) she was qualified for the position; 3) she was within the protected class at the time of discharge; and 4) she was replaced by someone outside the protected class, or otherwise discharged because of her sex. *Bodenheimer v. PPG Indus., Inc.,* 5 F.3d 955, 957 (5th Cir.1993).

If the Plaintiff is successful in making out a *prima facie* case of discrimination, the burden shifts to the defendant to show a legitimate, nondiscriminatory reason for the adverse employment decision. If the defendant articulates a nondiscriminatory reason of its adverse employment action, then the presumption is rebutted and the Plaintiff must prove that the nondiscriminatory reason was a pretext for discrimination. *St. Mary's Honor Ctr. v. Hicks,* —— U.S. ——, —— – ——, —— – ——, & n. 4, 113 S.Ct. 2742, 2747–49, 2751–53, & n. 4, 125 L.Ed.2d 407 (1993).

Plaintiffs have offered no evidence to show that they were replaced by someone outside the protective class, or that they were discharged because of their sex. Thus, Plaintiffs have failed to make out a *prima facie* case of discrimination. In addition, even if Plaintiffs did make out a *prima facie* case of discrimination, Plaintiffs have produced no evidence to show that Casa View's reasons for terminating them were a mere pretext for discrimination.

Rather, after Casa View learned that Plaintiffs and Baucum had entered into adulterous relationships, Casa View placed Plaintiffs on administrative leave with pay pending an investigation and advice from the insurance carrier regarding potential church liability. Steed Depos., pp. 393, 313–314, 429, 441, 448, 491–93, 740–43. Furthermore, Casa View promptly requested to Baucum that he resign. Smith Depos., pp. 423–24, 427–30, 451, 462–63. After Plaintiffs' were placed on leave, Casa View assigned their former duties to incumbent female employees. Williams Aff., ¶ 18.

Casa View's personnel policies provide that any moral conduct that is inconsistent with the Lord's standards is just cause for discharge. Steed Aff., ¶ 7. Plaintiffs do not dispute that entering into an adulterous relationship with Baucum is inconsistent with the Lord's standards. After the investigation was completed, Casa View offered Plaintiffs the opportunity to resign. Steed Depos., pp. 495–505, 538. When Plaintiffs refused to resign, Casa View terminated them for violating the personnel policy prohibiting conduct inconsistent with the Lord's standards. Steed Depos., pp. 543–44. Plaintiffs have failed to offer any evidence to show that Casa View's reasons for terminating them were a mere pretext for discrimination.[4]

As discussed above, Plaintiffs' assertion that they could not consent to the adulterous relations because Baucum seduced them is without merit. The fact remains that they violated Casa View policy and were terminated because of it.

Likewise, Plaintiffs' argument that Baucum received a more favorable termination package is unsupported by the record. Casa View asked Baucum to resign immedi-

---

4. Plaintiffs also argue under the mixed motives doctrine as set forth in *Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). However, under either theory, Plaintiffs still fail to offer any evidence that Casa View discriminated against them because of their sex.

ately, and the church gave him one month severance pay. Casa View placed Plaintiffs on involuntary leave with pay for two months, and paid them for two months of psychiatric counseling. Any difference in the termination package between Plaintiffs and Baucum is immaterial to a proper determination of Plaintiff's sex discrimination claim. Accordingly, because Plaintiffs have offered no evidence to show that Casa View discriminated against them because of their sex, or to show that Casa View's reasons for terminating them were a mere pretext for discrimination, the Court will grant Casa View's Motion For Summary Judgment regarding Plaintiffs' Title VII sex discrimination claim.

*Title VII–Sexual Harassment*

■ As discussed above, Plaintiffs have produced insufficient evidence to support a sexual harassment claim. Moreover, even if Plaintiffs could establish sexual harassment against Baucum, Plaintiffs cannot recover from Casa View for Baucum's alleged sexual harassment unless they can establish vicarious liability under *respondeat superior. Nash v. Electrospace Sys., Inc.,* 9 F.3d 401, 404 (5th Cir.1993). To establish such liability, Plaintiffs must prove that Casa View either knew or should have known of the harassment and failed to take prompt remedial action. *Id.* However, as discussed above, the Court has determined that Casa View did not know, nor should it have known of Baucum's conduct. Accordingly, the Court grants Casa View's Motion For Summary Judgment with respect to Plaintiffs' Title VII sexual harassment claim.

*Title VII–Retaliation*

■ To construct a *prima facie* case of retaliation, Plaintiffs must establish that: 1) they engaged in conduct protected under Title VII; 2) an adverse employment action followed; and 3) a causal connection existed between the activity and the adverse action. *Collins v. Baptist Memorial Geriatric Ctr.,* 937 F.2d 190, 193 (5th Cir.1991), *cert. denied,* 502 U.S. 1072, 112 S.Ct. 968, 117 L.Ed.2d 133 (1992). Plaintiffs cannot show a causal connection between the activity and the adverse action. As discussed above, Plaintiffs have

not produced any evidence to show that Casa View's stated reasons were a mere pretext for discrimination. The Court finds that Plaintiff has not met its burden with respect to their retaliation claim, just as they failed regarding their sex discrimination claim. Accordingly, the Court will grant Casa View's Motion For Summary Judgment with respect to Plaintiffs' Title VII retaliation claim.

*Intentional Infliction Of Emotional Distress*

■ Plaintiffs also allege a separate claim of IIED against Casa View for its actions toward Plaintiffs. As discussed above, Plaintiffs must prove the following to recover damages for their IIED claim:

1) Defendants acted intentionally or recklessly;

2) Defendants' conduct was extreme or outrageous;

3) Defendants' actions caused Plaintiff emotional distress; and

4) the resulting emotional distress was severe.

*Danawala v. Houston Lighting & Power Co.,* 14 F.3d 251, 256 (5th Cir.1993). However, after considering all the facts and circumstances in this case, the Court is of the opinion that Casa View's conduct by itself, without taking into consideration Baucum's actions, falls far short of "extreme or outrageous." When Plaintiffs approached Casa View and informed it of the relationships, Casa View promptly requested for Baucum's resignation. After conducting an investigation into the matter, Casa View requested Plaintiffs' resignations because they violated Casa View policy. Thus, the Court finds such conduct far short of extreme or outrageous. Accordingly, the Court will grant Casa View's Motion For Summary Judgment regarding Plaintiffs' separate IIED claim against Casa View only.

3) CASA VIEW'S SUMMARY JUDGMENT MOTION ON BAUCUM'S CROSS–CLAIMS:

Baucum has filed cross-claims against Casa View alleging that he was entitled to recover damages from Casa View under legal

theories of breach of contract and wrongful discharge. Baucum alleges that Pastor Smith and church deacon Steed made unkept promises to Baucum that induced Baucum into signing his letter of resignation and letter of repentance. Casa View argues that the First Amendment bars Baucum from bringing his cross-claims.

 The First Amendment to the United States Constitution provides in part that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof...." The First Amendment protects the act of a decision rather than a motivation behind it. *Young v. N. Ill. Conf. Of United Methodist Church,* 21 F.3d 184, 186 (7th Cir.1994). Civil court review of ecclesiastical decisions of church tribunals, "particularly those pertaining to the hiring or firing of clergy, are in themselves an 'extensive inquiry' into religious law and practice, and hence forbidden by the First Amendment." *Id.* at 187. *See also Serbian Eastern Orthodox Diocese v. Milivojevich,* 426 U.S. 696, 717, 96 S.Ct. 2372, 2384, 49 L.Ed.2d 151 (1976). Courts have concluded that "matters touching the relationship between a church and its minister, determination of salary, and assignment of duties and location, are matters of church administration and government and thus purely of ecclesiastical cognizance." *Young,* 21 F.3d at 185; *Natal v. Christian And Missionary Alliance,* 878 F.2d 1575, 1577 (1st Cir.1989). Religious bodies "may make apparently arbitrary decisions affecting the employment status of their clergy members and be free from civil review having done so." *Id.* at 187.

By its very nature, the inquiry which Baucum would have us undertake into the circumstances of his discharge "plunges an inquisitor into a maelstrom of Church policy, administration, and governance. It is an inquiry barred by the Free Exercise Clause." *Natal v. Christian And Missionary Alliance,* 878 F.2d 1575, 1578 (1st Cir.1989).

 Baucum argues that this Court can decide this case based on neutral principles because it involves a general contractual dispute. The Sixth Circuit denied a Methodist minister's breach of contract claim against his church after he was forced into retire-

ment. *Hutchison v. Thomas,* 789 F.2d 392 (6th Cir.1986). The Sixth Circuit stated that "the neutral principles" doctrine "has never been extended to religious controversies in the areas of church government, order and discipline, nor should it be." *Id.* at 396. Baucum's claim relates to his employment as a minister of Casa View. Therefore, his claim "concerns internal church discipline, faith, and organization, all of which are governed by ecclesiastical rule, custom, and law." *Id.* Therefore, the Court finds that the First Amendment bars Baucum's cross-claims against Casa View.

 Alternatively, the Court finds that Baucum has presented insufficient evidence to support a breach of contract claim. Baucum asserts that he suffered damages as a result of Casa View's failure to honor its oral promise to secure him reemployment without breaching confidences. Cross-Claim, ¶ 102. However, Baucum admits that he did not give Casa View any confidences to disclose, and that Pastor Smith did not promise to secure reemployment for Baucum. Baucum Depos., pp. 1306–7, 1313–14. Rather, Pastor Smith stated that he merely would help Baucum find a job. *Id.* This naked assertion does not constitute a binding contract because it lacks consideration. *McCulley Fine Arts Gallery, Inc. v. "X" Partners,* 860 S.W.2d 473, 477 (Tex.App.—El Paso 1993, no writ). Instead, Casa View requested Baucum's resignation upon being informed of the adulterous activity. If he denied the church's request, Casa View would have rightfully terminated Baucum for violating Casa View's policy. Baucum has presented insufficient evidence to support a claim for breach of contract or wrongful discharge.

For the above reasons, the Court grants Casa View's Motion For Summary Judgment regarding Baucum's cross-claims.

It is hereby **Ordered** that Shelby Baucum's Motion For Summary Judgment is **denied.**

It is further **Ordered** that Casa View Baptist Church's Motion For Summary Judgment On The Claims Of Plaintiffs Robyn Sanders And Cynthia Mullanix is **granted.**

It is further **Ordered** that Casa View Baptist Church's Motion For Summary Judgment On Shelby Baucum's Cross–Claims is **granted.**

SO ORDERED.