DUANE F. AMATO, Plaintiff-Appellant, v. VERNON C. GREENQUIST *et al.*, Defendants-Appellees.

First District (3rd Division)   Nos. 1—94—2763, 1—95—0350 cons.

Opinion filed April 16, 1997.

George S. Bellas and Mary Ann Jacoby Miller, both of Bellas & Wachowski, P.C., and E. William Maloney, Jr., of Maloney, Craven & Longstreet, P.C., both of Des Plaines, for appellant.

Edward D. D'Arcy, of Johnson & Bell, Ltd., of Chicago, for appellees Metropolitan Chicago Synod of the Evangelical Lutheran Church in America and Evangelical Lutheran Church in America.

JUSTICE LEAVITT delivered the opinion of the court:

Until late 1990, the plaintiff, Duane Amato, had thought himself a happily married man. According to a complaint he filed, he and his wife, Linda, had been married for 18 years and had two children. In 1987, the Amatos joined Peace Lutheran Church of Lake Zurich (Peace), a fledgling parish headed by defendant Pastor Vernon C. Greenquist. The Amatos became active in the church, and in October 1990, Linda began "faith counseling" with Pastor Greenquist. During November 1990, the plaintiff and Linda began experiencing marital problems that were accompanied by a "religious transformation" within her. Unbeknownst to Duane, during the course of faith counselling, Linda had begun an affair with Pastor Greenquist, who was also married. On December 22, the plaintiff sought and began a course of counselling with Greenquist. Greenquist obliged Duane's request for counselling without informing him of the continuing affair with Linda.

Duane discovered the relationship between Greenquist and Linda on February 15, 1991. He notified church authorities, including defendant Bishop Sherman Hicks, who was Greenquist's immediate superior within the church hierarchy. Bishop Hicks suspended Greenquist, and Greenquist resigned his position with Peace. Bishop Hicks also suggested that Duane seek professional counselling. Soon after,

Linda filed for a divorce from the plaintiff. Greenquist divorced his wife. Greenquist and Linda are now married.

The plaintiff's initial multicount complaint against Greenquist alleged intentional infliction of emotional distress, breach of a fiduciary duty, clergy malpractice and common law fraud. He also sued Bishop Hicks, alleging breach of a fiduciary duty and clergy malpractice. Finally, alleging *respondeat superior*, he sued Peace and the institutional hierarchy of the Lutheran church, which consists of the Evangelical Lutheran Church in America (ELCA) and the Metropolitan Chicago Synod of the Evangelical Lutheran Church of America (Met Synod) (collectively the church defendants).

Pursuant to motions filed by all of the defendants under section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West 1994)), the trial judge dismissed most of the counts for varying reasons stemming from the plaintiff's failure to state causes of action, but most particularly because (1) Illinois does not recognize the tort of clergy malpractice; and (2) the relationship between cleric and parishioner is not a fiduciary one. The trial judge granted the plaintiff leave to amend, and he filed a second amended complaint consisting of 14 counts restating many of the same allegations, except that he denominated the clergy malpractice claims against Greenquist and Bishop Hicks as "psychotherapy malpractice (gross negligence)."

The church defendants and Bishop Hicks renewed their section 2—615 motions to dismiss, and the trial judge granted them in their entirety, dismissing 10 of the 14 counts of the complaint. Pastor Greenquist also renewed his section 2—615 motion to dismiss, and in a separate order the trial judge dismissed, with prejudice, all of the counts against him with the exception of that alleging common law fraud. The judge entered findings pursuant to Supreme Court Rule 304(a) (134 Ill. 2d R. 304(a)), and the plaintiff seeks to overturn the dismissal, contending that he has alleged facts sufficient to withstand a motion to dismiss as to each of the counts dismissed.

Because the counts at issue were dismissed pursuant to section 2—615, we review the allegations of the complaint *de novo*, accepting as true all well-pleaded allegations and drawing all reasonable inferences in a light most favorable to the plaintiff. *T&S Signs, Inc. v. Village of Wadsworth*, 261 Ill. App. 3d 1080, 1083, 634 N.E.2d 306 (1994). We will uphold the dismissal only if "it clearly appears that no set of facts can be proved" that will entitle the plaintiff to recover. *People ex rel. Daley v. Datacom Systems Corp.*, 146 Ill. 2d 1, 11, 585 N.E.2d 51 (1991). Additional allegations pertinent to this appeal are as follows.

ELCA is "a nationwide organization of churches of the Lutheran

faith." Met Synod is "the local administrative 'branch' of the ELCA and directly oversees the operation and function of ELCA churches in the Chicago *** area, including PEACE." Bishop Hicks is the Met Synod's principal cleric. He oversees the operations of local ELCA churches in Chicago.

Greenquist received his training as a minister and counsellor through ELCA. In 1990, he had approximately 11 years' experience in preaching and counselling. His professional counselling experience included marriage counselling, faith counselling and general family counselling. Greenquist "held himself out as a skilled professional *** in matters of counselling." He, along with Peace and Met Synod, "encouraged [congregants] to seek counselling from the church and its clergy before seeking secular professionals in order 'to promote unity, closeness and interdependence within members of the congregation' (in accordance with stated church doctrine)." Furthermore, Greenquist "was acting within the scope and parameters of his employment duties on behalf of [the church defendants] and in furtherance of stated church doctrine when he counselled" the plaintiff.

When the plaintiff first approached Greenquist regarding marriage counselling, he had no knowledge of the ongoing relationship between Linda and Greenquist. Greenquist neither referred the plaintiff to an independent counsellor nor indicated that he would be unable to render "objective professional assistance." Rather, he "welcomed the opportunity to counsel [the plaintiff] in order to further his own personal goals *** to foster and promote his own sexual gratification, and to further undermine the marital relationship of" the Amatos. Furthermore, Greenquist revealed to Linda confidences he learned from the plaintiff during the counselling sessions in order to foster his relationship with Linda.

On March 5, 1991, the plaintiff advised Bishop Hicks of the circumstances. The plaintiff made an appointment for "counselling" with the bishop. Linda accompanied him to this session. The plaintiff alleged that this session constituted "professional counselling." However, he also alleges that the bishop counselled him "in furtherance of church doctrine." The bishop acted merely to protect the interests of the church. He "took no steps to remedy the situation" and "made no effort to save the marriage." Rather, he "counselled that [the plaintiff] should get further 'professional' counselling but that Linda did not need professional counselling because she had close spiritual friends she could pray with."

■ In recent years, an increasing number of cases have been brought by laity against clergy alleging abuse of the cleric-parishioner

relationship. The plaintiffs in these cases generally have denominated their claims "clergy malpractice." Our courts have refused to entertain such claims because the first amendment's free exercise clause prohibits courts from considering claims requiring the interpretation of religious doctrine. *Baumgartner v. First Church of Christ, Scientist*, 141 Ill. App. 3d 898, 904-06, 490 N.E.2d 1319 (1986). To permit claims for clergy malpractice would require courts to establish a standard of reasonable care for religious practitioners practicing their respective faiths, which necessarily involves the interpretation of doctrine. *Baumgartner*, 141 Ill. App. 3d at 906.

Nonetheless, when doctrinal controversy is not involved in a dispute between a claimant and a church, the first amendment does not require judicial deference to religious authority. *Bivin v. Wright*, 275 Ill. App. 3d 899, 903, 656 N.E.2d 1121 (1995). For instance, "in disputes over church property, Illinois courts have applied a 'neutral principles of law' approach, objectively examining pertinent church characteristics, constitutions and bylaws, deeds, State statutes, and other evidence to resolve the matter the same as it would a secular dispute. [Citation.] Using such an approach, the dispute must be resolved applying neutral legal principles, using purely secular analyses without relying on religious precepts." *Bivin*, 275 Ill. App. 3d at 903.

Applying these principles, the court in *Bivin* reinstated a claim of negligent supervision against a church brought by a husband and wife who had sued their reverend, the reverend's superior and the church, alleging that during the course of marital counselling, the reverend entered into a sexual relationship with the wife that exacerbated the marital problems. The court noted that "the church defendant does not claim that the alleged sexual misconduct of its minister was part of its religious beliefs or practices or was in any way sanctioned or condoned by the church." *Bivin*, 275 Ill. App. 3d at 902. Thus, the court held that it could not "conclude from plaintiffs' complaint that their cause of action *** will infringe upon, or place a burden upon, the church's freedom to exercise its religion." *Bivin*, 275 Ill. App. 3d at 903.

The decision in *Bivin* clarifies that Illinois courts may entertain lawsuits alleging tortious conduct by churches and their employees, so long as the resolution does not require interpretation of either religious doctrine or religious duties imposed on an individual by a particular church. We believe the approach announced in *Bivin* reflects a reasoned approach to determining the justiciability of disputes of this nature. It is also the approach that other jurisdictions have adopted in assessing the particular type of claims raised by the plaintiff in this case.

In *F.G. v. MacDonell*, 291 N.J. Super. 262, 272, 677 A.2d 258, 264 (1996), the court permitted a claim of negligent pastoral care and counselling against a cleric-counsellor who had "used his position to sexually exploit the counsellee." In so holding, the court recognized the constitutional limitations on the judiciary in such disputes but nonetheless stressed that whether such a claim is cognizable requires a determination that the court will not need to evaluate "dogma or ritual, or other matters of ecclesiastical concern." *MacDonell*, 291 N.J. Super. at 272-73, 677 A.2d at 263. Likewise, the Colorado Supreme Court has recognized that in the context of spiritual counselling, "the free exercise clause is relevant only if the defendant can show that the conduct that allegedly caused plaintiff's distress was in fact part of the belief and practices of the religious group." *DeStefano v. Grabrian*, 763 P.2d 275, 283-84 (Colo. 1988). See also *Sanders v. Casa View Baptist Church*, 898 F. Supp. 1169, 1174 (N.D. Tex. 1995). Accordingly, one court has observed that clerics cannot, using the shield of the first amendment, "masquerade[ ] in the form of marriage counsel[lors]" and then "prey" on a counsellee. *Sanders*, 898 F. Supp. at 1175.

The plaintiff contends that he has properly pled claims of "psychotherapy malpractice" against both Pastor Greenquist and Bishop Hicks. The defendants[1] contend that these counts merely restate the allegations of the clergy malpractice claim previously dismissed by the trial judge—claims the plaintiff concedes are not cognizable in an Illinois court. Although we acknowledge that the second amended complaint is not, in substance, radically different from the one previously dismissed, we will not determine the justiciability of these counts based upon the nomenclature used by the plaintiff in entitling the counts. That is, if the plaintiff's allegations, as a whole, can be fairly construed as claims of negligence directed at conduct other than the defendants' performance of their clerical duties, his claims must be reinstated. See 735 ILCS 5/2—612(b) (West 1994) ("[n]o pleading is bad in substance which contains such information as reasonably informs the opposite party of the nature of the claim"). On the other hand, if the factual allegations of the claims lead only to the conclusion that they allege malpractice by the defendants in their practice as members of the clergy, that would require us to adjudicate them pursuant to a reasonable cleric standard, hence rendering them nonjusticiable as in *Baumgartner*.

---

[1]Pastor Greenquist has not filed an appellate brief in this matter. We review the claims as to him under the standards announced in *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 345 N.E.2d 493 (1976).

The plaintiff's complaint clearly alleges that the plaintiff sought marital counselling from Pastor Greenquist and that Greenquist held himself out as a professional counsellor. Yet, the complaint also states that Greenquist "encouraged [congregants] to seek counselling from the church and its clergy before seeking secular professionals in order 'to promote unity, closeness and interdependence within members of the congregation' (in accordance with stated church doctrine)." Furthermore, Greenquist "was acting *** in furtherance of stated church doctrine when he counselled" the plaintiff. The plaintiff then lodges six specific charges against Pastor Greenquist, all premised on the allegation that the pastor "failed to exercise ordinary care" and "wilfully defrauded and deceived" the plaintiff. According to the complaint, the pastor (1) co-conspired with the plaintiff's wife to undermine the marriage; (2) did not divulge his conflict of interest; (3) failed to refer the plaintiff to a neutral counsellor; (4) rendered bad advice to further his own goals and sexual gratification; (5) divulged confidences to Linda; and (6) disregarded "all indicia of the transference and countertransference phenomena which normally occurs in the course of psychotherapy."

■ We note, initially, that each of these allegations is based, in part, on an underlying allegation of fraud. The trial judge has permitted the plaintiff to replead a separate fraud count, the allegations of which essentially duplicate the ones above. Fraud is a distinct cause of action in Illinois. To that extent, we do not believe the allegations of fraud are germane to a count alleging professional negligence, be it that of a psychotherapist or a cleric. *Cf. Williams v. Chicago Osteopathic Health Systems*, 274 Ill. App. 3d 1039, 1048, 654 N.E.2d 613 (1995) (recognizing differing elements and standard of proof between medical malpractice and fraud). Therefore, we address the count for malpractice solely to the extent it alleges that the pastor breached a duty of care owed to the plaintiff. Furthermore, the allegation regarding the pastor's conspiracy with Linda also has nothing to do with the pastor's counselling relationship with the plaintiff, and, hence, we find that it fails to state a claim for professional negligence.

As to the remaining allegations, were this case to involve directly the sexual relationship between cleric and counsellee, we might be inclined to consider the reasoning of the court in *MacDonell*, 291 N.J. Super. at 273, 677 A.2d at 263, which, as noted, permitted a claim of clergy malpractice, stressing the "bright line between counselling culminating in a sexual relationship with a counsellee

and other types of harm allegedly resulting from a failed counselling relationship." As in *Bivin*, the *MacDonell* court considered that when sexual misconduct is involved, the fear of treading on doctrinal matters is minimal and to establish a standard of care involved "no impenetrable barrier." *MacDonell*, 291 N.J. Super. at 275, 677 A.2d at 264.

However, unlike in *Bivin* and *MacDonell*, the sexual liaison here, while impacting upon the plaintiff, involved his wife, who is not a plaintiff. Furthermore, to the extent the plaintiff alleges mishandling of the transference phenomenon, the pastor did so with regard to Linda. Indeed, the plaintiff concedes in his brief that the pastor's sexual liaison with Linda is not the focal point of his claim of negligent counselling.

In essence, the plaintiff's complaint alleges that Pastor Greenquist, while counselling him in accordance with duties established by church doctrine, breached his duty as a professional marriage counsellor. We believe there is an inherent contradiction in this core allegation that exposes the problem with claims of malpractice against members of the clergy, even when couched in terms of professional or psychotherapy malpractice.

Nonetheless, the plaintiff urges, relying on the allegations of his complaint in conjunction with the decision in *Horak v. Biris*, 130 Ill. App. 3d 140, 474 N.E.2d 13 (1985), that Pastor Greenquist was required "to exercise the same professional care expected of other professionals in the field of psychotherapy." In *Horak*, a licensed social worker counselled the plaintiff on marital matters while he was engaged in a sexual relationship with the plaintiff's wife. The court recognized an action for social worker malpractice. However, central to the decision in that case was that the defendant held himself out as a social worker licensed by the State of Illinois. As such, he was required to exercise the degree of skill possessed by members of that profession.

The plaintiff's complaint does not allege that Greenquist is either a licensed social worker, licensed psychotherapist or a licensed marriage counsellor or that he held himself out as one. Indeed, during the time when the plaintiff's claims accrued, the statutes in force authorizing the licensing of and the establishment of standards for practitioners of these professions specifically exempted religious practitioners from their ambit, so long as they do not hold themselves out as qualified under the acts. *E.g.*, 225 ILCS 55/15(d) (West 1994) (Marriage and Family Therapy Licensing Act); 225 ILCS 20/4(2) (West 1994) (Clinical Social Work and Social Work Practice Act). Furthermore, to the extent Illinois has, subsequent to the alleged ac-

tions involved in this case, statutorily recognized an action for sexual exploitation within the confines of a psychotherapeutic relationship, it has limited recovery under that act to the victims of the exploitation and, in addition, excluded "counseling of a *** religious nature" from the definition of "psychotherapy." 740 ILCS 140/1(e) (West 1992) (Sexual Exploitation in Psychotherapy Act).

Finally, although the plaintiff does allege that Greenquist mishandled psychotherapeutic principles, such as the transference phenomenon, he does not allege that Pastor Greenquist had either formal training in and knowledge of these principles or any counselling training outside of his training by the defendant ELCA. Indeed, the plaintiff's allegations presuppose that a pastor is under the same ethical obligations the state imposes upon therapists it licenses. We cannot impose such obligations on a church within the constraints of the first amendment. That is the holding of *Baumgartner*, in which the court refused to impose the standards of the licensed medical professional upon a Christian Science practitioner. Accordingly, we will not uphold the plaintiff's complaint based upon the *Horak* decision.

The plaintiff also urges that our supreme court's decision in *Corgan v. Muehling*, 143 Ill. 2d 296, 574 N.E.2d 602 (1991), permits his claims. The plaintiff contends that, as in *Corgan*, because he alleged that Greenquist held himself out as a "professional counsellor," Greenquist may be held accountable for his negligent counselling, generally. *Corgan* involved the allegations of a plaintiff involved in a sexual relationship with the defendant psychologist. Even accepting *Corgan* for the broad proposition advanced by the plaintiff, we note again that the allegations of the complaint indicate that Pastor Greenquist's training as a counsellor was solely under the aegis of ELCA and was, thus, religious in nature.

The complaint does allege that the pastor held himself out as a "skilled professional" in matters of counselling, but it also admits that the pastor counselled in accordance with stated church doctrine and encouraged members to seek counselling within the church "before seeking secular professionals." The plaintiff alleged that Pastor Greenquist provided marriage counselling to him in accordance with church doctrine. That is not the same as a situation in which a plaintiff alleges that "a particular church *** also offer[s] purely secular counselling as a service to members of its congregation or to a broader segment of the population in need of such services." *Dausch v. Rykse*, 52 F.3d 1425, 1433 (7th Cir. 1994). We believe that given the particular facts alleged by the plaintiff, a trial court would be required to investigate the nature of counselling, as well as the train-

ing of counsellors, within this particular church. That is not permitted in Illinois (*Baumgartner v. First Church of Christ, Scientist*, 141 Ill. App. 3d 898, 490 N.E.2d 1319 (1986)) or in any other jurisdiction. See *Dausch*, 52 F.3d at 1432 n.4.

This area requires, as the *MacDonell* court recognized, that a bright line be drawn between those claims actionable and those that impinge on first amendment guarantees. In the factual context of this case, we believe that "line" requires us to uphold the trial judge's ruling. At core, the plaintiff has alleged that Pastor Greenquist is a very bad counsellor who tried during counselling sessions to hide an illicit affair with the plaintiff's wife. Yet, according to the complaint, he was performing the counselling itself in the context of duties imposed upon him as a cleric by church doctrine. And, as the plaintiff concedes, this case is about the counselling. We believe that to permit the plaintiff's claims would effectively erase the bright line espoused by the *MacDonell* court, a line we agree must be drawn. Accordingly, the trial judge did not err in dismissing the count for psychotherapy malpractice against Pastor Greenquist.

■ As to the plaintiff's allegations of malpractice against Bishop Hicks, we hold that the plaintiff has not properly alleged a counselling relationship, let alone an actionable duty. In response to the plaintiff's request that Bishop Hicks render counselling services to him as a result of Pastor Greenquist's activities, the bishop responded that the plaintiff should seek professional counselling. The plaintiff fails to allege any facts that support a conclusion that this was a "counselling" session. Rather, his complaint centers on the bishop's refusal to counsel him. First, we believe that the allegations clearly indicate that the plaintiff approached the bishop within the context of his duties as the head of the church. As such, the claim is clearly nonjusticiable. Furthermore, we fail to perceive how the bishop's response is actionable, even if he was acting in order to effect damage control, as the plaintiff alleges. We also conclude that the disciplinary action that Bishop Hicks subsequently did or did not take with regard to Pastor Greenquist is, as regards this case, outside any relationship he had with the plaintiff. The trial judge properly dismissed the psychotherapy malpractice claim against Bishop Hicks.

■ The plaintiff also alleges that both Pastor Greenquist and Bishop Hicks breached a fiduciary duty owed to the plaintiff. In the count against the pastor, the plaintiff assigns, as breaches of the duty, the same allegations, save the mishandling of the transference phenomenon, as he did in his count for malpractice. That is, that the pastor "wilfully defrauded" him by undermining the marital relationship; divulging confidences to Linda; not revealing his conflict of interest; and rendering advice against the plaintiff's best interest.

Under Illinois law, a fiduciary relationship is recognized to exist when "a special confidence [is] reposed in one who, by reason of such confidence, must act in good faith and with due regard to the interests of the person reposing such confidence." *In re Estate of Osborn*, 128 Ill. App. 3d 453, 455, 470 N.E.2d 1114 (1984). Such a relationship may exist as a matter of law, "or it may be the result of a more informal relationship—moral, social, domestic or even personal in its origin." *Estate of Osborn*, 128 Ill. App. 3d at 455.

Applying this definition in *Dausch v. Rykse*, the United States Court of Appeals for the Seventh Circuit held that Illinois law, in conjunction with the first amendment, prohibited the recognition of an action for breach of fiduciary duty premised upon the counselling relationship between a cleric and a church member with whom the cleric had been sexually involved. *Dausch*, 52 F.3d at 1438.

The *Dausch* court reasoned that in order to determine such a duty would require the court.

> "to define a reasonable duty standard and to evaluate [the cleric's] conduct against that standard, an inquiry identical to that which Illinois has declined to undertake in the context of a clergy malpractice claim and one that is of doubtful validity under the Free Exercise Clause. It is clear that Illinois would not entertain a claim for breach of fiduciary obligation under the circumstances alleged here." *Dausch*, 52 F.3d at 1438.

However, other jurisdictions that have faced this question have had "no difficulty" in concluding that a cleric's sexual activity with a counsellee or the spouse of a counsellee may be used by the counsellee as the basis to state a cause of action for breach of fiduciary duty. *DeStefano v. Grabrian*, 763 P.2d 275, 289 (Colo. 1988). See also *MacDonell*, 291 N.J. Super. at 276, 677 A.2d at 264-65; *Sanders v. Casa View Baptist Church*, 898 F. Supp. 1169 (N.D. Tex. 1995).

Although we agree with the courts in these jurisdictions that the relationship between a cleric and parishioner reflects many aspects of a fiduciary one, we hold that, under Illinois law, a contention that a cleric has breached his duty as a fiduciary is not actionable. We believe that when a parishioner lodges such a claim, religion is not "merely incidental" to a plaintiff's relationship with a defendant, "it [is] the foundation for it." *H.R.B. v. J.L.G.*, 913 S.W.2d 92, 99 (Mo. App. 1995). The fiduciary relationship is inescapably premised upon the cleric's status as an expert in theological and spiritual matters. The plaintiff's complaint confirms this.

In lodging his claim for breach of fiduciary duty, the plaintiff alleged that in divulging confidences to the pastor, he relied on the pastor's "representations concerning his professionalism, training,

skill, and experience, *as well as [his] commitment to God and religion.*" We consider it imprudent for a court to attempt to dissect the secular from the sectarian in this equation. While we would consider unlikely the pastor's ability to establish that his behavior in this case was religiously motivated (*cf. H.R.B.*, 913 S.W.2d at 98-99), the plaintiff's relief lies in other well-recognized causes of action, such as the count alleging intentional infliction of emotional distress, which we reinstate, as well as the fraud count, which the trial judge permitted the plaintiff to replead and which repeatedly finds its way into every allegation of both malpractice and breach of fiduciary duty raised by the plaintiff. Thus, we affirm the dismissal of the counts for breach of fiduciary duty against both Pastor Greenquist and Bishop Hicks. Furthermore, in light of our holding in this regard, we affirm the dismissal of counts VII, IX, XII and XIII of the plaintiff's complaint in that they are all claims of *respondeat superior* against the church defendants arising out of the alleged breaches of fiduciary duty by Pastor Greenquist and Bishop Hicks.

■ The trial judge also dismissed the plaintiff's count alleging intentional infliction of emotional distress against Pastor Greenquist. In order to plead such a claim, the plaintiff must allege facts establishing that the defendant's conduct was "extreme and outrageous and that the defendant either intended his conduct to inflict severe emotional distress or knew that there was a high probability that the conduct would cause such distress." The plaintiff also must allege that the conduct, in fact, caused severe emotional distress. *McGrath v. Fahey*, 126 Ill. 2d 78, 86, 533 N.E.2d 806 (1988).

A complaint for intentional infliction of emotional distress may stand "only where the conduct complained of [is] so outrageous 'as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.' " *Pavilon v. Kaferly*, 204 Ill. App. 3d 235, 245, 561 N.E.2d 1245 (1990), quoting Restatement (Second) of Torts § 46, Comment *d*, at 73 (1965). We may assess the outrageousness of a defendant's actions based, in part, upon a "defendant's improper use of a position of power which gives him the ability to adversely affect the plaintiff's interests." *Kolegas v. Heftel Broadcasting Corp.*, 154 Ill. 2d 1, 22, 607 N.E.2d 201 (1992).

The plaintiff alleged that he sought counselling "concerning his failing marriage." Pastor Greenquist acted in an extreme and outrageous manner by counselling the plaintiff while the pastor was involved with Linda Amato and by counselling in a manner designed to "covertly undermine" the couple's marriage. The plaintiff discovered the relationship between Greenquist and Linda when he found correspondences the two had been exchanging, including

Christmas and Valentine's Day cards, as well as "enclosed love letters." Greenquist told the plaintiff that his relationship with Linda was "God's will." The plaintiff concludes that, as a result of the pastor's actions, he has suffered "depression, despair, insomnia, anxiety, nervousness and emotional trauma."

We believe these allegations satisfy the plaintiff's pleading burden. The defendant allegedly used his position to learn confidential information, which he divulged to Linda in an effort to destroy the plaintiff's marriage. The plaintiff has alleged that the pastor's actions were intentional and that he has suffered various and severe emotional distresses as a result. *Cf. Kolegas*, 154 Ill. 2d at 21-25. Therefore, we vacate the portion of the trial judge's order dismissing count II of the plaintiff's complaint.

■ The remaining counts are against the church defendants and sound in *respondeat superior* based upon the intentional infliction of emotional distress by Greenquist, as well as emotional distress occasioned by Bishop Hicks. Under the doctrine of *respondeat superior*, an employer may be liable for the torts of his servant when such acts are committed in the course of employment and in furtherance of the employer's business; however, the employer is not liable if the employee commits the acts solely for his own benefit. *Giraldi v. Lamson*, 205 Ill. App. 3d 1025, 1030, 563 N.E.2d 956 (1990).

As to the church defendants' liability for Pastor Greenquist's actions (counts VIII, X and XIV), we hold that the complaint fails to allege that the pastor's actions in deceiving and otherwise counselling the plaintiff were for anything other than his own benefit. For instance, paragraph 25 of the common allegations states, "PASTOR did not reject DUANE'S requests for counselling or refer said request to an independent third party ***, but rather welcomed the opportunity to counsel DUANE in order to further his own personal goals." Furthermore, paragraph 26 of the common allegations states that "PASTOR *** counselled DUANE against DUANE'S best interests in order to further PASTOR'S own material goals, to foster and promote his own sexual gratification, and to further undermine the relationship of his parishioners." Because these core factual allegations underlie all of the plaintiff's *respondeat superior* counts involving Pastor Greenquist, the plaintiff cannot establish liability on this basis.

Count XI is entitled "respondeat superior-negligent infliction of emotional distress" and is based upon the actions of Bishop Hicks. In stating this claim, the plaintiff specifically incorporates the allegations against the bishop in count V, which was a claim for psychotherapy malpractice. We agree with the church defendants that the

essence of this claim is one for *respondeat superior* based upon psychotherapy malpractice, a claim which we have already rejected with regard to Bishop Hicks. Therefore, that claim may not stand against the church defendants.

For all of the forgoing reasons, we affirm the judgment of the circuit court in dismissing all of the counts in the plaintiff's second amended complaint, with the exception of count II for intentional infliction of emotional distress against Pastor Greenquist, which we reinstate.

Affirmed in part, vacated in part and remanded for further proceedings.

McNAMARA and RAKOWSKI, JJ., concur.