Mrs. L. A. McMULLIN, Plaintiff,
v.
William PALMER, Defendant.

No. DC651.

United States District Court
N. D. Mississippi,
Delta Division.

June 30, 1966.

Sullivan, Dunbar & Smith, Clarksdale, Miss., for plaintiff.

Holcomb, Curtis & Connell, Clarksdale, Miss., for defendant.

### MEMORANDUM OPINION

CLAYTON, Chief Judge.

This personal injury damage suit was tried to a jury and a verdict in favor of plaintiff in the amount of $25,000 was returned. Judgment for plaintiff was entered in accordance with the verdict.

A timely filed motion by defendant for judgment in favor of defendant in accordance with his at trial motion for directed verdict, notwithstanding the verdict, or, alternatively for a new trial as to all issues (Rule 50(b), Federal Rules of Civil Procedure) is before the court on briefs.

Defendant urges and argues the following principal points. First, he says that the fact that a defense witness was identified as an insurance adjuster caused the jury to disregard the instructions of the court and the overwhelming weight of the evidence and decide the case for plaintiff. Second, plaintiff was guilty of contributory negligence and thus barred from recovery under applicable Florida law. Third, that the award of damages is excessive and, in effect, is the product of the insurance factor aforementioned.

Plaintiff is the mother-in-law of defendant, and she was visiting with defendant and his family in Florida at the time of her injury. Defendant's recently rented, recently occupied, home was located on a lake which was to the rear of the house. Plaintiff was injured when she fell into shallow water from a pier which ran out into the lake from defendant's property.

On cross-examination at the trial, she was questioned in detail about a written statement obtained by one Howell from her. The version of how she was injured contained in the statement varied materially from her testimony at the trial,

but she testified that she gave Howell none of the information for the statement, that she was in pain during his visit, did not read the statement after it was prepared by Howell, but signed it in reliance on defendant's assurance that it was all right to do so. She admitted her signatures thereto, but denied that the initials at changes therein were made by her.

When plaintiff was tendered for redirect examination, a conference with the court out of the presence of the jury was held at the request of plaintiff's counsel, who stated that they wished to develop the fact that Howell was an adjuster for an insurance company to show his interest and bias in taking the statement. Thereupon *counsel for defendant stated that they had no objection to this proposal.*

During redirect examination in the presence of the jury, plaintiff testified that Howell was an adjuster for an insurance company.

After the close of plaintiff's case in chief, defendant called Howell as a witness. With respect to the statement signed for him by plaintiff, he testified that she gave him all the information from which it was prepared, that she signed it and initialed the changes therein, and that she appeared normal at the time. He also testified about his work for an insurance company and his experience as an adjuster. He was the only witness called by defendant.[1]

▮ Also, with respect to defendant's argument about the insurance features of the case, plaintiff's counsel in closing argument to the jury, in dealing with the conflicts between the contents of the unsworn statement taken from plaintiff by Howell and her sworn testimony as a witness, argued in substance that Howell as an adjuster was interested in

getting a biased or defense favorable statement. *There was no objection made by defendant to this line of argument,* and, frankly, the court considered it in line with the record and proper argument. Certainly the comparative credibility of Howell and plaintiff had to be decided by the jury.

▮ Moreover, when insurance first came into the case and afterward as a part of its final instructions, the court told the jury that the insurance evidence was to be disregarded, except as it might affect their findings with respect to the credibility of Howell as a witness. The court is now unable to say that the jury disregarded these plain instructions. In fact, it appears that the jury followed these instructions, as the law presumes they did.

▮▮ On the question of contributory negligence, it must be borne in mind that the jury was fully instructed about the application of this aspect of Florida law. The presence or absence of contributory negligence on the part of plaintiff was a fact question for determination by the jury, and it is apparent that they were warranted in finding that there was no contributory negligence on the part of plaintiff and that there was negligence on the part of defendant which was a proximate cause of plaintiff's fall and her injuries. A severely condensed version of the evidence on the question of liability follows. Plaintiff testified that although she had been down to the lake front, she had never been under the pier, that she remembered, and had never been on the pier before the day of her fall. As she walked out on the pier, which to her appeared to be in good condition, she came to a place on the pier where the boards were covered by a rubber mat. As she stepped onto the mat, she stepped on a board near the middle of the pier which gave

---

1. Defendant was called as an adverse witness by plaintiff and his testimony in chief was developed by his attorneys by direct examination at that time.

way with her and caused her to fall off the pier.[2]

Defendant in a pre-trial deposition testified that the boards under the rubber mat were bad, being cracked and rotten; that he knew of this condition before plaintiff's injury, but did not warn her about it. He said the reason he never warned her about it was because "we were never down there at the same time. If we had been on the pier together, then I would have mentioned it to her, but I was working and was just there on Saturday afternoons and Sundays, and it never occurred to me to tell her to stay off of it, that it is bad. It just never occurred to me to tell her." He also testified at that time that the boards under the rubber mat were not visible to a person walking out on the pier. And, at trial, although his testimony was equivocal and somewhat inconsistent, he testified more than once that his deposition was still his testimony. In sum, if the jury believed plaintiff's testimony, as a witness at the trial, which obviously they did, she was free of contributory negligence and defendant, according to his own testimony, was negligent under Florida law.

But, defendant says, that when the pier under the mat was dismantled after plaintiff's injury, only one board was found to be broken and this was at the edge—not the middle—of the pier. This, defendant contends, demonstrates conclusively that plaintiff's fall did not occur in the manner as testified by plaintiff. It must be borne in mind, however, that plaintiff did not testify that a board broke in the middle of the pier, but that a board "gave way" when she stepped on it. Considering all the evidence, the jury would have been justified in finding, as apparently they did, that one of the boards under the mat was in such bad condition that it could not bear with rigidity plaintiff's weight when she stepped on it, but instead it bent downward, which caused plaintiff to lose her balance and fall. Defendant's position on this point, therefore, is not well taken.

Defendant's reliance on the cases cited in his brief is misplaced. They are all distinguishable on their facts, but it is well to note here that one of these cited cases, Goldberg v. Straus, 45 So.2d 883 (S.Ct.Fla.1950) was one of the principal Florida cases relied on by this court in instructing the jury in the case here. Andrews v. Goetz, 104 So.2d 653 (C.A. Fla.1958) has no application here. In that case, the injury complained of occurred in mid-morning on a clear day when plaintiff's view was entirely unobstructed and on premises with which plaintiff was thoroughly familiar. Mrs. McMullin was confronted in the case here with a hazard, if any, which was concealed from her by a rubber mat. Jensen v. Grace Lutheran Church, 163 So.2d 782 (C.A.Fla.1964) was decided on complaint and motion to dismiss. Plaintiff's complaint here meets the requirements there announced. In Cornell v. First National Bank, 121 Fla. 192, 163 So. 482 (1935) plaintiff was injured when he closed a night deposit box on his own hand. And, on their facts, Carter v. J. Ray Arnold Lumber Co., 83 Fla. 470, 91 So. 893 (1922) and Stanley v. Powers, 125 Fla. 322, 169 So. 861 (1936) are as different on their facts as is Cornell. Petroleum Carrier Corp. v. Robbins, 52 So.2d 666 (S.Ct.Fla.1951) involved an automobile collision wherein plaintiff's decedent was killed when he drove an automobile into a parked truck owned by defendant. The facts as stated in the opinion justified a holding that plaintiff's husband had been guilty of contributory negligence as a matter of law. Such is not the case here.

None of the cases cited on the question of contributory negligence would in any way require a holding here that

2. In the written statement taken by Howell, it is said, "A board on the pier near the end is out and has a rubber mat tacked over the hole. As I got near the end, my toe caught in a hole and I fell into the lake * * *"

plaintiff was guilty of contributory negligence as a matter of law. Undisputed evidence establishing that Mrs. McMullin was guilty of contributory negligence simply is not in this record.

■ From what has been said, it seems clear to this court that defendant's motion for judgment notwithstanding the verdict is not well taken. The applicable rule is well stated in 2B Barron & Holtzoff Federal Practice and Procedure (Wright Ed.1961) § 1075, where, among other things, it is said:

A motion for judgment notwithstanding the verdict is actually merely a renewal of a previous motion for a directed verdict as to which the court has reserved decision. Thus the standard is the same for both motions as to when they should be granted. Motions of this kind raise the question whether there is or was any substantial evidence to take the case to the jury. Since, if granted, they deprive the party of a determination of the facts by a jury, they should be cautiously and sparingly granted. The court may not substitute its judgment on a question of fact for that of the jury, nor direct a verdict because the evidence decidedly preponderates for the moving party * * *

A question for the jury is presented when fair minded men may differ as to the conclusions of fact to be drawn from the evidence. If reasonable men might reach different conclusions from the evidence, a motion for a directed verdict should be denied, but if no reasonable man could reach a verdict for the adverse party the motion should be granted.

The propriety of granting or denying a motion for a directed verdict is tested both in the trial court and on appeal by the same rule. The trial court must view the evidence and all inferences most favorably to the party against whom the motion is made. The reviewing court must do the same

with respect to a judgment entered on a directed verdict or the denial of a motion for a directed verdict or a judgment entered notwithstanding the verdict. The decisions are many and the rule is the same both on appeal, and on the hearing of the motion in the trial court.

■ Considering now the second or alternative aspect of defendant's motion which is for a new trial, although Florida cases might be helpful to the court, it must be said that the grant or denial of a new trial is a matter of procedure governed by the Federal Rules of Civil Procedure and not by state law or practice. 3 Barron & Holtzoff Federal Practice and Procedure (Wright Ed. 1958) § 1301. And, in that same work, at section 1302, among other things, it is said:

The burden of showing prejudicial error rests on the party seeking the new trial. When the court is passing on a motion for judgment notwithstanding the verdict, it is bound to accept as true the evidence favorable to the verdict, even though there may be strong testimony to the contrary, but the court is not so hobbled in considering whether to order a new trial, and may rely on its own judgment as to the weight of the evidence. The motion invokes the sound discretion of the court, and is not reviewable, if at all, save for clear abuse of discretion.

See also Tidwell v. Ray, 208 F.Supp. 952 (N.D.Miss.1962).

In weighing all the evidence which the jury had before it to deal with the motion for a new trial, no sound reason can be found for this court to say that the jury had no reasonable basis for bringing a verdict in for plaintiff. In fact, the deposition of defendant and his unsatisfactory evidence as a trial witness were enough to justify a finding that he was negligent and that such negligence was a (or the) proximate cause of plaintiff's fall.

And, as to the damage award, it is well to repeat that this court feels that the fact that one defense witness was an insurance adjuster played no part with the jury in arriving at this verdict. Nor, can it be said with any assurance that the amount of the damage award was in any degree excessive.

 Plaintiff was 57 years old at the time of her injury. Before that, she had enjoyed good health and was able to do all of the housekeeping incident to the operation of a large home and to work on the grounds of that residence regularly. Even a severely abbreviated statement of the injuries sustained in the fall from the pier and their aftermath will demonstrate that the dollar value of her damages is substantial. There was a fracture of the oscalcis; osteoporosis; parathesia; hyperthesia; limitation of dorsiflexion and plantarflexion; pes cavus with resulting causalgia. This latter produced such sensitivity to pain that mere contact with the foot or ankle causes extreme pain which can be only partially relieved by a surgical lumbar sympathectomy. This operation would in no way relieve the other painful conditions. She also now has hammer or claw toes and muscular atrophy. She has a pronounced limp which is permanent and until the date of the trial had been unable to perform many of her household and garden or lawn activities as aforementioned. She was confined to a wheelchair for a substantial period of time, was required to use a walker and was ambulatory with crutches for an extended period and then could walk only with the aid of a cane for an additional period which was also quite extended. She was required to wear a cast for more than two months. It is beyond question that she has suffered many hours of excruciating pain and that she will continue to suffer a substantial amount of pain for the rest of her life.[3] The medical evidence was to the effect that she suffers a 40% permanent disability to the foot and a 10% permanent disability to the entire leg which is involved.

This verdict, the court now finds, is not excessive.

This case was fairly tried with minimal objections to the introduction of evidence and with no exceptions of any consequence to the instructions given to the jury by the court.[4] The result of this trial is by this court in all respects approved. Here this case should end.

An order will be entered overruling defendant's motion in all its aspects.

---

3. The life expectancy for a person of her age at time of injury as shown by a standard mortality table was slightly more than 20 years. No evidence indicated that her own life expectancy had been shortened by her injuries.

4. The only exceptions to the court's instructions which were made by defendant were that the court failed to instruct the jury not to include in any verdict which they might bring in for plaintiff small items of household expense which were made necessary by plaintiff's inability to perform her work and which she testified were paid by her husband—not by her. The court thereupon gave additional instructions to the jury which eliminated those items from their consideration and there were no additional exceptions.